IN THE MATTER OF THE APPLICATION OF JAMES J.
DONOVAN, CORNELIUS J. O'NEILL AND DANIEL J.
SWEENEY FOR A WRIT OF CERTIORARI TO REMOVE
AN INDICTMENT TO THE SUPREME COURT.

Argued September 3, 1942, and September 10, 1942—Decided
September 11, 1942.

Before Justice CASE, sitting alone pursuant to the statute.

For the applicants, *John Warren.*

For the State of New Jersey, *Daniel O'Regan,* Prosecutor
of Hudson County; *Frank G. Schlosser* and *Raymond J.
Otis,* Assistant Prosecutors.

CASE, J.  Applicants seek a writ of *certiorari* to remove
an indictment against them from the Hudson County Court
of Quarter Sessions to the Supreme Court. The main reasons
upon which the writ is sought are that (1) applicants desire
to move to quash for matters *de hors* the indictment, (2)
they desire to move to quash for alleged faults said to appear
on the face of the indictment and (3) they propose, failing
in those motions, to ask that they be put to trial in a court
other than where the indictment now lies. If the reasons
numbered (2) and (3) stood alone, I would deny the writ,
leaving the applicants to other and more usual procedure.

As to (1): The indictment charges that the applicants,
respectively the Director of Public Safety, the Deputy Direc-
tor of Public Safety (also secretary to the director) and

chief of police of the City of Bayonne, willfully neglected to perform their public duties in and about the suppressing of vice. It is the contention of the applicants that the indictment was not the presentment of an impartial grand jury but ensued from a bitter feud within the democratic organization of Hudson County wherein Mayor Donovan, as he alleges, led the insurgent Bayonne organization against the dominant county control and is being visited, in reprisal, with attempted political extinction, that the finding of the indictment was an inspired step in the attempted effort to end the public activities of Donovan and his associates, was accomplished by public officers subservient to the dominant control and was timed to arouse public resentment in anticipation of the May, 1943, election when the city officers will be elected under the provisions of the Walsh Act for the usual four year term. The proofs are by *ex parte* affidavit, are voluminous and go into much detail. Indeed, they bring in some extraneous matters which properly should have been omitted. I shall not detail them here, and this for two reasons: first, to do so would give unpleasant notoriety to persons who are not parties and who had no opportunity to be heard; second, such a course would be fruitless in view of my determination, stated below, whereunder opportunity will be given for the more orderly presentation of pertinent proofs.

The supporting proofs are, as I have indicated, but simple affidavits, taken *ex parte,* with accompanying exhibits. That means, of course, that the affiants were not subjected to cross-examination, were not held to the rules of evidence, were not confronted with other witnesses and did not experience the solemnizing atmosphere of court procedure; and that is true, too, of the reply affidavits, filed on behalf of the state, which deny many of the charges made in the first mentioned proofs. Also, the applicants, at this informal stage, have had no benefit of subpœna to bring in hostile or unwilling witnesses or documentary proofs not in their possession; so, too, as to the respondent. But the case of the applicants, as it stands before me, shows a series of events preceding,

leading up to and following the finding of the indictment which bear indicia of a planned campaign by influential political forces in which the grand jury presentment was a progressive step toward a desired result, that result being the destruction of the applicants, and chiefly Donovan, as a political force. I do not find that such is the fact; but under all of the circumstances an opportunity should be given to try out the fact, and such issues as arise therefrom. I was in some doubt, not about the jurisdiction of the Supreme Court to do this under its writ of *certiorari*, but whether as a matter of procedure and practice it should. The practice, according to the cases, seems to have wavered. The earlier cases sustain not only the right but the practice. Later cases, as for instance *State* v. *Riggs* (1918), 91 *N. J. L.* 456, held that a motion to quash an indictment removed to the Supreme Court by *certiorari* for that purpose would not be given favorable attention unless the indictment on its face appeared incapable of supporting a judgment of conviction and that such a motion based on illegal acts with respect to the impaneling of the grand jury (and apparently any incident at or prior to the impaneling) which required proof of facts outside of the indictment would not be granted. But the Supreme Court in *State* v. *Borg* (1931), 9 *N. J. Mis. R.* 59, appears to have reverted to the earlier ruling and, acting under its writ of *certiorari*, it there quashed an indictment upon the two grounds of insufficiency in the indictment and the partisan political activities of those concerned in procuring the indictment. *State* v. *Ellenstein*, 119 *N. J. L.* 597; 121 *Id.* 304, is also, but not so completely, in point; the matters *de hors* the indictment considered there occurred subsequent to the impaneling of the grand jury. It seems, therefore, that the Borg decision is controlling and that the writ should issue. Since the writ is to issue the prosecutors will not be limited by the *allocatur* to the particular reason by which I am persuaded to allow the writ.